UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| --- | --- | --- |
| v. | * | NO. 24-121 |
| TYRAN ADAMS | * | SECTION: "L" |

## ORDER AND REASONS

Before this Court is Defendant Tyran Adams' Motion to Review the Magistrate's Ruling Denying Motion to Reopen Detention Hearing. R. Doc. 57. The Government opposes the motion. R. Doc. 61. Considering the briefing and the applicable law, the Court now rules as follows.

I.  BACKGROUND

This case arises out of alleged illegal possession of firearms and a conspiracy to possess and distribute controlled substances. On June 22, 2023, Louisiana State Troopers were engaged in a high-speed chase involving Defendants Lawrence Watkins, Keyan Brown, and Lawrence Brown through the Algiers area of New Orleans. R. Doc. 57. These Defendants eventually crashed their car and continued to flee on foot. *Id.* The Troopers followed the Defendants and witnessed them jump into a parked car in the lot of a nearby apartment building. *Id.* Defendant Tyran Adams was sitting in the vehicle when Watkins, Brown, and Brown entered. *Id.* The Troopers then surrounded the vehicle, ordered everyone to exit, and arrested all the Defendants, including Adams. *Id.* Law enforcement officers searched the vehicle and found multiple firearms and drug paraphernalia. *Id.* On May 23, 2024, the Grand Jury issued a ten-count indictment against the Defendants. R. Doc. 1. The charges against Adams are set forth in Counts One (conspiracy to possess with intent to distribute controlled substances), Two (conspiracy to possess firearms in furtherance of a drug trafficking crime), Five (possession with intent to distribute cocaine and fentanyl), Six (possession

1

of a firearm in furtherance of a drug trafficking crime), and Seven (being a felon in possession of a firearm). *Id.*

### A. The June 21, 2024 Detention Hearing Held by the Magistrate

The Magistrate conducted a detention hearing for Adams on June 21, 2024. R. Doc. 30. Before the hearing, the Court received a Pretrial Services Report from the U.S. Probation Office recommending detention. R. Doc. 29. The Government moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(C) and (E) and § 3142(f)(2), invoking the presumption of detention for risk of flight. Defense counsel advised that Adams stipulated to detention, with reservation of rights to re-open. R. Doc. 30. Before proceeding, the Magistrate verified that Adams understood the limitations for requesting reconsideration of detention set forth in 18 U.S.C. § 3142(f). *Id.* Specifically, the Magistrate confirmed that Adams understood his attorney could only move to reopen detention if he has new information not known to him at the time of consenting to detention, and that new information has a material bearing on whether there are any conditions of release that will reasonably assure his appearance as required and the safety of any other person or community. *Id.* Considering the risk of flight presumption, the recommendation of pretrial services, and Defendant's stipulation, the Magistrate issued an Order of Detention. R. Doc. 31.

### B. Magistrate Denies Motion to Reconsider Detention Pursuant to 18 U.S.C. § 3142(f)

On September 3, 2024, the Magistrate held a hearing on Adams' motion to reopen detention on the basis that he had recently obtained an Instagram Live video that depicted the events leading up to his arrest. R. Doc. 56 While Adams conceded that he was aware of this allegedly exculpatory evidence at the time of his initial detention hearing, he pointed out that the video was only available on his cell phone seized by the Government, and thus, it was impossible for him to timely present it to the Magistrate. *Id.* The Magistrate, however, declined to reopen the

2

detention question, reasoning that Adams failed to present "new" information as required under the strict interpretation of 18 U.S.C. § 3142(f). *Id.* The Magistrate noted that the Instagram live video could not be characterized as "new" because Adams clearly had knowledge of the video's existence at the detention hearing. *Id.*

## II.   PRESENT MOTION

Adams filed a motion requesting that this Court reopen detention and review the Magistrate's order anew in light of the new evidence he had obtained pursuant to 18 U.S.C. § 3145(b), which allows a district judge to conduct a *de novo* review of detention. R. Doc. 57. On October 17, 2024, the Court held a hearing on Adams' motion (the "October 17 Hearing"). At the October 17 Hearing, the Government called U.S. Probation Officer Silvette Ennis of the U.S. Probation Office for the Eastern District of Louisiana to testify as to the Pretrial Services Report that she prepared, which recommended Adams be detained pending trial. The Government also called FBI Special Agent Sheila McMillan who testified to the general timeline and events leading up to Adams' arrest as well as evidence which the Government argues points to Adams' involvement in illicit activity. In opposition, Adams called his mother, Tanya Francis, who testified that she would be willing to house her son during his home incarceration and monitor his compliance with any potential court order granting his release subject to specified conditions. At the conclusion of the October 17 Hearing, the Court took the parties' arguments on the motion to reopen under advisement and ordered supplemental briefing.

## III.   APPLICABLE LAW

### A. Standard for Pretrial Detention

For pretrial detention to be imposed on a defendant, there must exist "no condition or combination of conditions [that] will reasonably assure either the defendant's appearance or the

safety of the community." *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992). Either the lack of reasonable assurance of the defendant's appearance or the safety of others or the community is sufficient; both are not required. *Fortna*, 769 F.2d at 249 (citing cases). However, there are two distinct burdens of proof for the two justifications for detention. The Bail Reform Act requires a determination that "no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f). While the Act is silent on the burden of proof required to demonstrate the lack of reasonable assurance for a defendant's appearance, Fifth Circuit courts making that determination "apply the simple preponderance standard." *Fortna*, 769 F.2d at 250 ("That is to say, to order detention on this ground the judicial officer should determine, from the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance.").

B. **Rebuttable Presumption of Detention for Violations of Controlled Substances Act and Federal Gun Control Act**

Under Section 3142(e), the existence of probable cause to believe that the defendant committed "an offense for which a maximum term of imprisonment of ten years or more" in violation of the Controlled Substances Act, 21 U.S.C. §§ 801-971, creates a rebuttable presumption that no conditions of release would "reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A-B) (citing 21 U.S.C. § 801, *et seq.*); *see also Rueben*, 974 F.2d at 586. This same presumption also applies when a defendant has committed violations under certain specified offenses of the Federal Gun Control Act, 21 U.S.C. § 924(c). *Id.* Notably, the rebuttable presumption shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion. *Rueben*, 974 F.2d at 586. That burden of "production" is minimal and "not a heavy one to meet." *United States v. Dominguez*, 783 F.2d

4

702, 707 (7th Cir. 1986). A defendant simply needs to produce "some evidence that he will not flee or endanger the community if released," at which point the statutory presumption is rebutted. *Id.*; *see also United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) ("[T]o rebut the presumption, the defendant must produce some evidence.").

   C. **Section 3142(g) Factor Test**

Once the defendant's production burden is satisfied, Section 3142(g) directs the judicial officer to consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance, firearm . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including— (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

The case law demonstrates that this analysis is fact-laden, and there are no bright line rules. *See generally Rueben*, 974 F.2d at 586; *Hare*, 973 F.2d at 798; *United States v. Emmons*, 294 Fed. Appx. 848 (5th Cir. 2008). The Court will thus have the ultimate discretion to order or deny detention based on a factual analysis under 18 U.S.C. § 3142(g).

IV.   ANALYSIS

To determine whether Adams' detention is proper in this case, the Court will proceed accordingly. First, the Court will address whether Adams has produced enough evidence to rebut the presumption of detention under § 3142(e). Second, the Court will engage in a § 3142(g) analysis to ascertain whether the Government has met its burden to support a finding that Adams should be detained.

**A.  Adams Has Rebutted the § 3142(e) Presumption**

Adams is charged in the indictment with multiple alleged violations of both the Controlled Dangerous Substances Act and the Federal Gun Control Act. R. Doc. 1. On this basis, the Court finds that there is probable cause to believe that he committed an offense for which Section 3142(e) creates a rebuttable presumption of detention. *See United States v. Diaz*, No. 3:08-cr-267 (SAF), 2008 WL 4561561, at *3 (N.D. Tex. Oct. 9, 2008) (explaining that "an indictment provides probable cause that a defendant committed an offence . . . sufficient to trigger the statutory presumption" in 18 U.S.C. § 3142(e)). Adams thus bears the burden of producing rebutting evidence. Here, the Court is satisfied that Adams has provided at least "some" credible evidence to rebut the presumption of his detention. *See Dominguez*, 783 F.2d at 707. At the October 17 Hearing, Adams produced evidence showing (1) that he was shocked when the other Defendants jumped into his car shortly before they were all arrested and (2) strong family support from his mother and stepfather. This evidence rebuts the inference that Mr. Adams would shirk court appearances because there appears to be some exculpatory evidence that militates in favor of his innocence. It also supports a premise that Adams' family would be in a position to control his inclinations to traffic drugs or possess firearms, mitigating his danger to the community. Regardless, the presumption does not "totally disappear[] from the judge's consideration after the

defendant comes forward with evidence," *Hare*, 873 F.2d at 798, and "remains in the case [as] a factor to be considered by the judicial officer," *Fortna*, 769 F.2d at 251. The Court thus considers the presumption as a factor among those identified in Section 3142(g) to determine whether conditions of release exist that will reasonably assure Adams' appearance at trial and the safety of any other person and the community.

### B. The Nature and Circumstances of Adams' Offenses

First, Section 3142(g)(1) directs the Court to consider "the nature and circumstances of the offense charged." Adams is charged with drug trafficking and firearm violations, which are serious offenses. At the October 17 Hearing, the Government proffered evidence that Adams possessed a firearm and controlled substances because they were discovered in his car near where he was allegedly sitting just prior to his arrest. In the Fifth Circuit, "the risk of continued narcotics trafficking on bail does constitute a risk to the community." *Rueben*, 974 F.2d at 586 (citing *Hare*, 873 F.2d at 798). Moreover, although possessing a firearm may not be inherently dangerous to the community, a "loaded firearm . . . has the great potential to escalate into violence." *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020). The "dangerous combination" of "guns and drugs" present here are highly probative of Adams' danger to the community. *See Smith v. United States*, 508 U.S. 223, 240 (1993). Accordingly, the Court finds that the nature and circumstances of the offenses charged weigh in favor of detention.

### C. The Weight of the Evidence Against Adams

Second, Section 3142(g)(2) directs the Court to consider "the weight of the evidence" against the defendant. This factor essentially requires that the Government present evidence to support its request for pretrial detention. *See United States v. Jackson*, 845 F.2d 1262, 1265 (5th Cir. 1988) (overturning detention order when "government made no effort to advise the trial court

concerning the 'weight of the evidence'"). Indeed, the Fifth Circuit has held that "the government cannot reasonably argue that the Section 3142(e) presumption, coupled with the allegations of the indictment against [the defendant], are alone sufficient to satisfy Section 3142(g)." *Id.* at 1266. The Bail Reform Act expressly provides that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information" at a detention hearing. 18 U.S.C. § 3142(f). A judicial officer may, therefore, "rely on matters brought out at the hearing which would not be considered as 'evidence' under traditional trial standards." *Fortna*, 769 F.2d at 250.

Adams has presented some seemingly exculpatory evidence. At the October 17 Hearing, the Court reviewed police body camera footage depicting the events leading up to Adams' arrest as well as photos of drugs and a firearm found in the front passenger seat of Adams' vehicle. Adams also produced an Instagram Live video, which he contends shows his state of confusion and shock when the other Defendants jumped in his car. He argues that he did not know the men and was simply in the wrong place at the wrong time. Additionally, Adams noted that one of the other Defendants moved from the back to front seat before exiting the vehicle, calling into question whether the firearm and drug paraphernalia found in the front seat were in fact his. Lastly, Adams produced affidavits explaining that he was in his car waiting for his friend who was visiting someone at the apartment complex. R. Doc. 65.

However, the Government also provided the Court with additional evidence indicating that Adams did in fact know at least some of the Defendants who jumped in his car that day. R. Doc. 66 at 3. More specifically, it alleges that Adams and Defendant Lawrence Brown starred in two publicly-available YouTube videos together, and some of Adams' rap lyrics from other videos reference Defendants Lawrence Watkins and Keyan Brown. *Id.* at 3-4. Given the factual

discrepancies, the Court finds that this factor raises a question as to Adams' credibility and thus weighs in favor of detention.

### D. Adams' History and Characteristics

Third, Section 3142(g)(3) directs the Court to consider "the history and characteristics" of the defendant. The Bail Reform Act requires a court to consider "available information" concerning a defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings. 18 U.S.C. § 3142(g)(3)(A). Additionally, a court must consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial." *Id.* § 3142(g)(3)(B). According to the Pretrial Services Report, Adams has several prior arrests and convictions involving controlled substances and illegal possession of firearms, a violent behavior history related to aggravated battery and domestic abuse, and frequently engaged in criminal activity while under supervision. R. Doc. 64. Notably, Adams has also had fugitive warrants issued against him in state court as recently as September 2022, which indicates a heightened risk of his non-appearance. *Id.* AlthoughAdams' mother testified that she would allow him to reside with her and ensure his court appearances, the Court still remains concerned whether she could "assert any appreciable control, either physical or emotional," over Adams and his actions. *See United States v. Howard*, No. 4:06-cr-86 (TRM), 2006 WL 3300462, at *4 (N.D. Tex. Oct. 19, 2006). Thus, the Court finds that this factor weighs in favor of detention.

### E. The Nature and Seriousness of the Danger Posed by Adams' Release

Finally, Section 3142(g)(4) instructs the Court to consider the "nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."

When evaluating this factor, the Fifth Circuit instructs that "the risk of continued narcotics trafficking on bail does constitute a risk to the community" and "drug offenders pose a special risk of flight and dangerousness to society." *Rueben*, 974 F.2d at 586 (citing *Hare*, 873 F.2d at 798-99). As discussed, Adams has an extensive criminal history including drug and firearm charges similar to the ones charged here, which are identifiable and articulable threats to the community. R. Doc. 29. Furthermore, Adams has ignored conditions of his supervised release, resulting in revocation more than once. *Id.* The Court is unsure whether Adams would adhere to conditions of release when he has already shown his willingness to violate them. Therefore, the Court finds that this factor weighs in favor of detention.

### F. The § 3142(g) Analysis Supports a Finding that Adams' Detention is Warranted

Accordingly, the nature and character of the present charged offenses, Adams' history and characteristics, the potential danger that Adams poses to the community, and the rebuttable presumption support Adams' detention pending trial. Based on his past disregard for release conditions and past engagement in criminal activity under court supervision, the Court finds that there are no conditions sufficient to reasonably assure the Defendant's appearance, by a preponderance of the evidence, or the safety of any other person and the community, by clear and convincing evidence. While the Court is sympathetic to Adams' arguments as to his innocence, the question at issue here is whether detention is warranted, not whether he is conclusively guilt. With this in mind, the Court will uphold the Magistrate's finding of detention, which is also supported by the recommendation of Adams' probation officer.

### V. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Adams' Motion to Review the Magistrate's Order on Detention, R. Doc. 57, is **DENIED**. Adams shall remain in custody pending trial, which is presently scheduled for November 18, 2024.

New Orleans, Louisiana this 30th day of October, 2024.

_____
United States District Judge